# EXHIBIT M



**JAMES FARRELL, Plaintiff, v. U.S. BANK, N.A. and WELLS FARGO BANK, N.A., Defendant.**

Case No. 2:15-cv-10559

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

2015 U.S. Dist. LEXIS 141561

October 14, 2015, Decided
October 14, 2015, Filed

**PRIOR HISTORY:** Farrell v. Harvey Elam Fair Value Appraisal Servs., 2012 U.S. Dist. LEXIS 45119 ( E.D. Mich., Feb. 29, 2012)

**COUNSEL:** [*1] In re James Farrell, Debtor, Pro se.

James Farrell, Appellant, Pro se, Lake Orion, MI USA.

For US Bank, N.A., Wells Fargo Bank, N.A., Appellees: John P. Kapitan, LEAD ATTORNEY, Trott Law, P.C., Farmington Hills, MI.

**JUDGES:** STEPHEN J. MURPHY, III, United States District Judge.

**OPINION BY:** STEPHEN J. MURPHY, III

**OPINION**

### ORDER AFFIRMING THE DECISION OF THE BANKRUPTCY COURT

Plaintiff James Farrell ("Farrell") appeals from a decision of the bankruptcy court, and seeks reversal of an order denying Farrell's motion to reopen his bankruptcy case. Pl. Br. 5, ECF No. 4. Defendants U.S. Bank and Wells Fargo ("Banks") oppose Farrell's motion. Because there are no grounds on which to reopen Farrell's bankruptcy case, the Court affirms the bankruptcy court's decision. The Court also denies as moot the demands made by Farrell in his reply brief regarding counsel for the Defendants.

**BACKGROUND**

On December 7, 2010, the Banks foreclosed upon and sold, in a Sheriff's sale, the property located at 52 Tweed Lane, Lake Orion, Michigan ("property"). Def. Br. Ex. H, ECF No. 7-9. The owner of the property, Farrell, did not redeem the property during the statutory redemption period, which expired on June 7, 2011. Farrell unsuccessfully challenged [*2] the foreclosure in state and federal court. Farrell filed a voluntary petition for bankruptcy under Chapter 7 on September 25, 2013, and filed an adversary proceeding against the Banks on December 5, 2013. *Id.* The bankruptcy court dismissed that action, but Farrell continued to file motions for leave to appeal, to reopen the case, and to sanction the Banks for alleged violations of the discharge injunction. All of Farrell's motions were unsuccessful. On Janury 22, 2015, Farrell filed another motion to reopen both his main bankruptcy case and the adversary proceeding against the Banks. *Id.* at 2-3. On January 29, 2015, the bankruptcy court denied his motion, and this appeal followed.

**STANDARD OF REVIEW**

The decision whether to reopen a bankruptcy case is "committed to the sound discretion of the bankruptcy judge and will not be set aside absent abuse of discretion." *In re Rosinski*, 759 F.2d 539, 540-41 (6th Cir. 1985). A bankruptcy court abuses its discretion when it "relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *In re Murray, Inc.*, 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008). If a reasonable person could agree with the bankruptcy court's decision, there is no abuse of discretion. *Id.*

## DISCUSSION

The bankruptcy court noted that Farrell [*3] wanted to reopen his cases to seek money damages against the Banks for trying to evict him from the foreclosed property. Def. Br. Ex. H, ECF No. 7-9. But the bankruptcy court had "previously ruled that both U.S. Bank and Wells Fargo Bank have the right to pursue their state court remedies to obtain the Lake Orion property." *Id.* at 3. Therefore, there was no relief available to the debtor, and allowing him to reopen his case would be futile. *Id.*

Rather than state grounds for reversing the bankruptcy court's decision, Farrell's appellate brief (1) attacks the validity of the Banks' interest in the property and (2) argues that the foreclosure process was defective for lack of proper agency. Pl. Br. 2-3, ECF No. 4. These issues have already been litigated. Farrell's reply brief similarly fails to provide any compelling reason to reverse the bankruptcy court's refusal to reopen Farrell's cases. Instead, the reply objects to the Banks' counsel's participation in the proceedings and demands that the Court strike the Banks' brief. Farrell's arguments fail to address how the bankruptcy court may have abused its discretion, which suggests that this appeal is an effort to further delay his eviction from [*4] the property. Thus, the Court affirms the decision of the bankruptcy court, and denies Farrell's demands as moot.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the decision of the bankruptcy court is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Plaintiff's demands (document no. 8) are **DENIED**.

**SO ORDERED.**

/s/ Stephen J. Murphy, III

STEPHEN J. MURPHY, III

United States District Judge

Dated: October 14, 2015



Positive
As of: December 13, 2016 1:31 PM EST

# Grant v. Granader (In re Granader)

United States District Court for the Eastern District of Michigan, Southern Division

January 21, 2016, Decided; January 21, 2016, Filed

Case No. 15-12605, Chapter 7; Case No. 11-43076

**Reporter**
2016 U.S. Dist. LEXIS 6939 *; 2016 WL 245255

IN RE: Alan Granader, Debtor.Judith Grant, Appellant, v. Alan Granader, Appellee.

**Subsequent History:** Affirmed by *Grant v. Granader (In re Granader), 2016 U.S. App. LEXIS 18520 (6th Cir.) (6th Cir. Mich., 2016)*

**Prior History:** *Grrenader v. Grenader, 2009 Mich. App. LEXIS 2277 (Mich. Ct. App., Oct. 29, 2009)*

## Core Terms

motion to reopen, bankruptcy court, fraudulent transfer, bankruptcy case, reopening a case, reopen, doctrine of laches, conveyance, fraudulent, divorce judgment, investigate, contends, asserts, prompt, alternative ground, promissory note, undisclosed, appears, divorce, reasons, argues, Reply

**Counsel:** [*1] For Alan Granader, In Re: Karin F. Avery, Silverman & Morris, West Bloomfield, MI.

For Judith Grant, Appellant: Aaron J. Scheinfield, LEAD ATTORNEY, Goldstein Bershad & Fried PC, Southfield, MI.

For Alan Granader, Appellee: Geoffrey L. Silverman, LEAD ATTORNEY, Silverman & Morris, West Bloomfield, MI; Karin F. Avery, Silverman & Morris, West Bloomfield, MI.

**Judges:** Honorable Sean F. Cox, United States District Judge. Honorable Marci B. McIvor

**Opinion by:** Sean F. Cox

## Opinion

**OPINION & ORDER**

This is a bankruptcy appeal from a Chapter 7 proceeding. Appellant Judith Grant's ("Grant") appeal relates to two orders of the Bankruptcy Court: (1) the Order Granting in Part and Denying in Part Creditor Judith Grant's Motion for Reconsideration of this Court's Order Denying Her Motion to Reopen; and (2) the Ordering Denying Grant's Motion to Reopen, entered in connection with the Bankruptcy Court's Supplemental Opinion Denying Creditor Judith Grant's Motion to Reopen Debtor's Case.

The Court finds that the facts and legal arguments are adequately presented in the briefs and record, and that the decisional process would not be significantly aided by oral argument. *See Fed. R. Bankr. P. 8019*; Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. For the [*2] reasons set forth below, the Court shall AFFIRM the bankruptcy court's rulings.

**BACKGROUND**

The following background facts are primarily gleaned from the Bankruptcy Court's July 22, 2015, Supplemental Opinion Denying Judith Grant's Motion To Reopen Debtor's Case. (Bankr. Docket # 37, "Supp. Opinion"). Like the bankruptcy court, this Court believes "a little history is necessary" in order to put Grant's arguments in context.

**I. Factual Background**

Judith Grant is Alan Granader's ("Debtor") ex-wife. (Supp. Opinion, at 1). On August 18, 2005, prior to the divorce, Debtor borrowed $350,000 from the Alan Granader Irrevocable Trust ("the Trust"). *Id.* Debtor signed a promissory note agreeing to repay the loan. *Id.*

Grant subsequently filed for divorce on May 26, 2006. *Id.* at 2. The Oakland County Circuit Court entered a Judgment of Divorce ("Divorce Judgment") on January 14, 2008. *Id.* The

Divorce Judgment awarded Grant monthly payments of $21,531.

Two years later, on March 19, 2010, a Stipulated Order and Money Judgment entered in the divorce action determined that Debtor owed Grant a principal amount of $47,146. *Id.*

On April 26, 2010, pursuant to an agreement, Grant became the holder of the $350,000 promissory [*3] note originally issued by Debtor to the Trust. *Id.* It is undisputed that Debtor was not a party to the agreement. It is also undisputed that the Divorce Judgment makes no mention of the promissory note.

On February 8, 2011, Debtor filed a bankruptcy petition seeking relief under Chapter 7 of the Bankruptcy Code. *Id.* Debtor listed the $47,146 principal balance owed to Grant on his Schedule E (unsecured priority claims). *Id.* The $350,000 promissory note was disclosed on his Schedule F (unsecured non-priority claims). *Id.* Debtor received a discharge on July 19, 2011. *Id.* On August 26, 2011, Debtor's bankruptcy case was closed. *Id.*

In April 2015, Grant filed the following pleadings in the divorce case: (1) a Motion for preliminary injunction against Rosellen Gliner (Debtor's current wife), Sylvia Granader (Debtor's mother), and the Sylvia Granader Trust; (2) a Motion to rescind and void the April 2010 agreement between Grant and Leonard Nagel, as trustee of the Trust; and (3) a Motion to hold Dan Granader in contempt. *Id.* at 2-3. Each of the above motions were withdrawn by Grant, without prejudice.

On April 28, 2015, Grant filed the following motion in Oakland County Circuit Court: Motion for Declaratory [*4] Ruling that [Debtor] is Personally Liable for Monthly Private Annuity Payments Under Judgment of Divorce. *Id.* at 3. Grant's Motion pertained to the $350,000 promissory note.

In May 2015, Grant filed the following three lawsuits in the Oakland County Circuit Court: (1) Complaint against Rosellen Gliner alleging receipt of fraudulent transfers (Case No. 15-146883-CZ)[1]; (2) Complaint against Sylvia Granader and the Sylvia Granader Trust alleging receipt of fraudulent transfers (Case No. 15-146882-CZ)[2]; and (3) Complaint against Leonard Nagel as trustee of the Trust, to set aside the 2010 settlement (Case No. 15-147390).[3] *Id.* at 3.

On June 3, 2015, the Oakland County Circuit Court denied Grant's April 28, 2015 Motion. *Id.* at 4. The Court explained that it was bound by the terms of the Divorce Judgment. Thus, the Court concluded that, [*5] in the event the private annuity fails to provide Grant, the appropriate remedy would be for Grant to seek spousal support. *Id.* On June 8, 2015, the court issued a written order denying Grant's Motion. Pursuant to the court's Order, Debtor was required to pay $1,000 in attorneys fees and a money judgment in the amount of $52,038. Debtor provided Grant with two checks in the amounts of $52,038 and $1,000 on June 4, 2015. *Id.* Per the court's order, these payments released all liens and garnishments.

**II. Procedural Background**

On June 12, 2015, Grant filed an ex-parte Motion to Reopen Debtor's Chapter 7 Case in the United States Bankruptcy Court, Eastern District of Michigan. (Bankr. Docket # 22, Motion to Reopen). The action was assigned to the Honorable Marci B. McIvor, United States Bankruptcy Judge, and was assigned as Case No. 11-43076. Grant's motion to reopen sought to:

> (1) reappoint Chapter 7 trustee[4] to administer assets and recover fraudulent transfers made by Granader to his mother and/or her trust, and to his current wife;
>
> (2) file an adversary proceeding to determine the dischargeability of the $350,000 debt owed to Grant "as this debt relates back to a domestic support obligation [*6] arising under the divorce judgment"; and
>
> (3) refer Granader and his family to the United States Trustee/Department of Justice for investigation and prosecution of bankruptcy and tax fraud

(Motion to Reopen, at 3-5).

At a hearing on June 23, 2015, the Bankruptcy Court denied Grant's motion, concluding that Grant lacked standing. (Bankr. Docket # 34). The Court issued a written order denying Grant's motion to reopen on June 25, 2015. (Bankr. Docket #33).

**Grant's Motion for Reconsideration**

On July 9, 2015, Grant filed an "Ex-Parte Motion for Reconsideration Of [The] Order Denying Creditor Judith

---

[1] Debtor contends that this case is still pending. Grant contends that she has attempted to dismiss the case without prejudice in order to preserve a trustee's right to pursue these charges if the bankruptcy case is reopened. Grant contends that Debtor has opposed a dismissal without prejudice.

[2] Please refer to the footnote above.

[3] Debtor contends that Grant voluntarily dismissed this case without prejudice.

[4] George Dakmak, the Trustee at the time of the bankruptcy, has since died.

Grant's Motion To Reopen Case Pursuant to *11 U.S.C. § 350(b)*." (Bankr. Docket #35, Motion for Reconsideration). In it, Grant advanced various arguments with respect to: (1) the status of the $350,000 debt; (2) her standing as a creditor; (3) a creditor's right to receive a distribution with regard recoverable undisclosed assets and transfers of money; and (4) the lapse in time with respect to reopening the case not constituting prejudice. *Id.*

**Bankruptcy Court's Opinion & Order on Grant's Motion To Reconsider & Supplemental Opinion Denying Grant's** [*7] **Motion to Reopen**

The bankruptcy court granted in part and denied in part Grant's Motion for Reconsideration. (Bankr. Docket #36). The court granted the Motion to the extent that it ruled that Grant did in fact have standing. However, the court, *sua sponte*, found alternative grounds for denying Grant's Motion to Reopen. The court laid out its alternative grounds for denial in a Supplemental Opinion Denying Grant's Motion to Reopen on July 22, 2015.

In its Supplemental Opinion, the bankruptcy court determined that: (1) reopening the case was not necessary for a determination of non-dischargeability; (2) reopening the case will provide no benefit to creditors that cannot be obtained in state court; and (3) a motion to reopen on the grounds of fraud upon the court is barred by the doctrine of laches. (Supp. Opinion at 7; 9; 10).

**Grant's Notice of Appeal**

On June 23, 2015, Grant filed a Notice of Appeal, appealing "from the final order of the United States Bankruptcy Court's Order Denying Grant's Motion to Reopen (docket no. 38) entered in this bankruptcy case on July 22, 2015." (Bankr. Docket #39).

**STANDARD OF REVIEW**

The standard of review that applies to a bankruptcy court's denial of a motion [*8] to reopen a debtor's case is as described in *In re Smyth, 470 B.R. 459, 461 (B.A.P. 6th Cir. 2012)*:

> A bankruptcy court's order denying a motion to reopen the debtor's bankruptcy case is a final and appealable order. The decision on a motion to reopen is committed to the sound discretion of the trial court and the reviewing court should not set aside the bankruptcy court's decision absent an abuse of discretion. Therefore, findings of fact are not set aside unless clearly erroneous and matters of law are reviewed de novo.

*Id.* (internal citations omitted).

**ANALYSIS**

**I. Grant's Due Process Claim**

As an initial matter, Grant asserts that the bankruptcy court's Supplemental Opinion constituted a violation of her due process rights because she was not afforded the opportunity to respond to the alternative grounds for denial. (Docket #6, Grant's App. Brief, at 12). Grant argues that the court had no authority to find new and alternative grounds to deny Grant's Motion to Reopen. Grant's assertion here is conclusory. Grant does not identify which of the bankruptcy court's alternative grounds are at issue. Additionally, Grant does not support her claim with any authority.

Debtor correctly points out that the bankruptcy court is not required to advise [*9] a party that it intends to apply applicable law. (Docket #7, Debtor's App. Brief, at 29). He additionally contends that the bankruptcy court may rule on a motion to reopen without a hearing. Finally, Debtor asserts that Grant was aware of, and had an opportunity to address the timeliness issue since it was raised at the June 23, 2015 hearing. In her Reply, Grant does not dispute the arguments advanced by Debtor. (Docket #9, Grant's Reply Brief). The Reply appears to disregard the due process claim altogether. Since Grant has not made an effort to develop her position in this regard, neither should the Court.

Moreover, the allegedly "new" grounds laid out by the bankruptcy court in its Supplemental Opinion appear to have been made as responses to the arguments advanced by Grant in her Motion for Reconsideration. Since Grant is the one who laid the issues out for the bankruptcy court, Grant's own pleadings put her on notice of the possibility that the bankruptcy court would respond to the arguments laid out therein.

For these reasons, the Court shall disregard Grant's due process claim as it is under developed and without merit.

**II. The Bankruptcy Court Did Not Abuse Its Discretion When** [*10] **It Denied Grant's Motion to Reopen**

Grant brought her Motion to Reopen pursuant to *11 U.S.C. § 350(b)*, which provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." *11 U.S.C. § 350(b)*. The decision to reopen a closed case is a matter within the court's sound discretion. *In re Wilson, 511 B.R. 103, 105 (Bankr. E.D. Mich. 2014)*. In making this determination, the court "'must strike a balance between the rights of the [the affected] creditors on the one hand and the policy of the fresh

start afforded to Debtor by operation of Chapter 7 of the Bankruptcy Code.'" *In re Tarkington, 301 B.R. 502, 506 (Bankr. E.D. Tenn. 2003)* (quoting *In re Frasier, 294 B.R. 362, 366 (Bankr. D. Colo. 2003)*).

Since the statute does not define "cause" for reopening a closed case, such motions are to be decided by the court on a case by case basis, based upon the equities of each particular case. *In re Tarkington, 301 B.R. at 506*. Motions to reopen for cause "should be granted only where a compelling reason for reopening the case is demonstrated.'" *In re Emery, 428 B.R. 709, 711 (W.D. Mich. 2010)* (quoting *Urbanco v. Urban Sys. Streetscape, Inc., 111 B.R. 134, 135 (W.D. Mich. 1990)* (internal quotations omitted)). Accordingly, the court should not reopen a case if doing so would be futile. *See Chanute Prod. Credit Assoc. v. Schicke, 290 B.R. 792, 798 (10th Cir. BAP 2003)* ("A bankruptcy court that refuses to reopen a Chapter 7 case that has been closed will not abuse its discretion if it cannot afford the moving party any relief in the reopened case."). [*11]

In asserting that the bankruptcy court abused its discretion by denying her Motion to Reopen, Grant advances the following arguments: (1) the Chapter 7 Trustee has a duty pursuant to *11 U.S.C. 704* to investigate the Debtor's financial affairs since the Trustee represents the interests of unsecured creditors; (2) the Chapter 7 Trustee has the exclusive right to bring a fraudulent conveyance action; (3) affirming the bankruptcy court's ruling would condone fraudulent activity by the Debtor; (4) the benefit to creditors of reopening the case far exceeds the burden placed on the court; (5) the doctrine of laches is inapplicable in the instant case; and (6) Grant has no ability to pursue a fraudulent conveyance action in state court.[5] (Grant's App. Brief).

## A. The Bankruptcy Court Properly Applied The Doctrine Of Laches

The bankruptcy court has advanced alternative and independent grounds for denial of Grant's motion. Because the bankruptcy [*12] court's application of the doctrine of laches was reasonable, there is no need for the Court to spend time discussing the merits of the bankruptcy court's remaining grounds for denial. For the reasons below, the bankruptcy court's denial on the basis that Grant's motion is barred by the doctrine of laches is not an abuse of discretion.[6]

Although the Bankruptcy Code imposes no time limit on a motion to reopen, the time in which one is made must be reasonable. *See F.R.B.P. 9024; Fed. R. Civ. P. 60(c)(1)*. "Notwithstanding this discretion, a case should not be reopened to relieve a party of the consequences of his own mistake or ignorance." *Virgin Islands Bureau of Revenue v. St. Croix Hotel Corp., 60 B.R. 412, 414 (D.V.I. 1986)* (internal citations and quotations omitted). When deciding whether to reopen a closed case, the length of time between the closing and the motion to reopen is an important consideration to the bankruptcy court, which also weighs the significance of the potential bankruptcy asset at issue, together with any prejudice to the debtor. *In re Plumlee, 236 B.R. 606, 610 (E.D. Va. 1999)*.

Here, the bankruptcy court explained that although it takes very seriously any allegation of fraud on the court:

> in the context of a motion to reopen, the Court must also consider the importance of prompt and efficient administration of bankruptcy cases. In *Virgin Islands Bureau of Revenue v. St. Croix Hotel Corp., 60 B.R. 412, 414 (D.V.I. 1986)*, the court discussed the importance of the prompt administration of a bankruptcy estate: the consensus of authority holds that the most important consideration in deciding to reopen the case is the timeliness [*14] of the motion.
>
> . . . .
>
> At the heart of this view is the doctrine of laches, which not only applies in bankruptcy proceedings but is an important consideration because the chief purpose of the bankruptcy laws is to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period of time.

---

[5] On appeal, Grant does not address the bankruptcy court's ruling as to the dischargeability of the $350,000 note. Thus, Grant has waived her appeal as to this issue. *Farm Labor Org. Comm. v. Ohio State Highway Patrol, 308 F.3d 523, 544 n.8 (6th Cir. 2002)* ("It is well established that an issue not raised in a party's briefs on appeal may be deemed waived.").

[6] Debtor additionally argues that the bankruptcy court's decision was not an abuse of discretion because a reappointed trustee would be precluded from bringing any fraudulent conveyance action, since the statute of limitations set forth in *§§ 546* and *549(d)* have all passed. (Debtor's App. Brief, at 16-17). Grant replies that the statute of limitations for avoidance actions is tolled when a claim or asset is concealed: when there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered... (Reply Brief, at 10) (quoting *Baily v. Glover, 88 U.S. (21 Wall) 342, 348-50, 22 L. Ed. 636 (1875)*). Per Grant's own pleadings, a finding of laches precludes the application of the doctrine of equitable tolling. Thus, the bankruptcy [*13] court has reasonably applied the doctrine of laches, it appears that a trustee would be precluded from bringing a conveyance action.

(Supp. Opinion, at 11) (internal citations and quotations omitted).

At oral argument, Grant's counsel stated that Grant had ineffective counsel during the duration of the bankruptcy case, which is why the alleged fraudulent transfers had not been discovered. (Bankr. Docket #34, at 8-9). In its Supplemental Opinion, the court pointed out that "Grant [did] not assert that the fraudulent transfers could not have been discovered during the bankruptcy case; she only asserts that she did not discover the fraudulent transfers until late in 2014." (Supp. Opinion, at 11). The court found this distinction significant because the fraudulent transfers alleged by Grant were discoverable in 2011. *Id.* The court noted:

> The Bankruptcy Code provides the Chapter 7 Trustee and creditors with remedies to investigate the accuracy of a debtors schedules and statement of financial [*15] affairs. *11 U.S.C. § 341* requires that debtors testify under oath as to their financial condition. *Fed. R. Bankr. P. 2004* allows the Trustee and creditors to thoroughly investigate the financial condition of debtors.

*Id.* at 12, n. 2. The bankruptcy court found Grant's reason for waiting almost four years to file her Motion to Reopen insufficient to override the importance of prompt and efficient administration of bankruptcy cases:

> [i]n a case where the Trustee and unsecured creditors had every reason to ferret out undisclosed assets and fraudulent transfers while the case was open, an untimely argument about fraud is insufficient to outweigh the importance of prompt and efficient administration of this bankruptcy case.

*Id.*

On appeal, Grant argues that the duty to investigate the financial affairs of the debtor and the duty to administer assets belongs to the Chapter 7 Trustee, not the creditors. (Grant's App. Brief, at 19). Grant takes the position that as a creditor, she must rely on the trustee's due diligence and investigatory efforts. *Id.* Grant additionally takes issue with the court's "argument that many of the unsecured creditors were sophisticated and had every motive to find undisclosed assets." *Id.* at 20. Grant's argument here appears to misconstrue [*16] the bankruptcy court's opinion. The bankruptcy court does not attempt to shift the trustee's investigative duties on to creditors, but rather, it correctly points out that the Bankruptcy Code affords creditors various means by which to protect their interests.[7] Thus, contrary to Grant's assertions, none of Debtor's unsecured creditors were so limited in that they must have relied *solely* on the investigative efforts of the trustee.

Grant additionally contends that, "'when the purpose of the motion to reopen is to add an undisclosed asset, the most important consideration is the benefit to the creditors.'" *Id.* at 27 (quoting *In re Arana, 456 B.R. 161, 173 (E.D. N.Y. 2011)*; *In re Upshur, 317 B.R. 446, 450 (N.D. Ga. 2004)*). However, in advancing this argument, Grant ignores the distinction the bankruptcy court makes between "omitted assets" and "fraudulent transfer claims." This is not a case [*17] where recovery is certain. Rather, it is a case involving allegations of fraud. There has been no determination by any court that fraudulent transfers indeed took place. During the hearing on Grant's Motion to Reopen, Judge McIvor stressed the following:

> I want you to know that I looked at every single exhibit that was filed. There are no allegations… [t]he pleadings don't explicitly allege a failure. There's innuendo… there was nothing alleging anywhere close to the type of allegations to establish some sort of fraud on the court…"

(Bankr. Docket #34, at 15). Despite Judge McIvor's assertions, Grant maintains that reopening the case will confer a benefit on creditors, and relies on the following cases to substantiate her claims: *In re Arana, In re Upshur, and In re Dewberry, 266 B.R. 916 (Bankr. S.D. Ga 2001)*. The bankruptcy court correctly distinguished these cases in that they involved undisclosed pre-petition claims and causes of actions belonging to the debtor, whereas here, "the allegedly 'omitted assets' are *not* assets of the debtor, but are, instead, fraudulent transfer claims." (Supp. Opinion, at 10). Thus, the court's determination that recovery for Granader's creditors is uncertain is reasonable.

Finally Grant argues that the mere passage of time is not [*18] sufficient enough reason for the court to "overlook the blatant fraud before its eyes." (Grant's App. Brief, at 28). While it is true that "passage of time alone does not necessarily constitute prejudice… sufficient to trigger a laches bar," Grant appears to ignore the various factors implicit in the bankruptcy court's ruling. *In re Tarkington, 301 B.R. at 507* (internal citations and quotations omitted). Where, as here, delay is combined with other factors, the passage of time

---

[7] Grant argues that even if she had discovered the alleged fraudulent conveyances while the case was open, only a "Chapter 7 Trustee has the exclusive right to bring a fraudulent conveyance action… during the pendency of the Debtor's bankruptcy case." (App. Brief at 21). Again, Grant appears to misconstrue the Court's ruling and it disregards the rights and protections afforded to creditors under the Code.

may constitute prejudice. *In re Bianucci, 4 F.3d 526, 528 (7th Cir. 1993)*. First, Grant has only *alleged* fraud. Second, the bankruptcy court's decision to deny Grant's motion is not based solely on lapse of time. Rather, the court considered the importance of prompt and efficient administration, it considered the *reasons* for the delay, it considered the benefit, if any, afforded to the creditors, and it also distinguished the present case from the only two cases it could find where a motion to reopen was granted more than four years after the close of the case. In weighing all of this against the benefit creditors may *potentially* realize on Grant's fraudulent conveyance claims, the bankruptcy court's decision to deny the motion is reasonable.

## CONCLUSION

For the reasons set forth above, IT [*19] IS ORDERED that the bankruptcy court's orders are AFFIRMED.

**IT IS SO ORDERED.**

/s/ Sean F. Cox

Sean F. Cox

United States District Judge

Dated: January 21, 2016

---



Cited
As of: December 13, 2016 1:49 PM EST

## *In re Ketscher*

United States Bankruptcy Court for the Eastern District of California

June 2, 2014, Decided; June 3, 2014, Filed

Case No. 12-17088

**Reporter**
2014 Bankr. LEXIS 2506 *

In re Frank Jeffrey Ketscher and Carol Kathleen Ketscher, Debtors.

**Notice:** NOT FOR PUBLICATION

**Subsequent History:** As Corrected June 5, 2014.

## Core Terms

reopen

## Case Summary

**Overview**
HOLDINGS: [1]-None of the enumerated grounds supported reopening; [2]-The arising under and arising in found in *28 U.S.C.S. § 1334* were are not in play; [3]-The only basis for bankruptcy court involvement was the more narrow post-closure related to jurisdiction; [4]-The first reason to reopen the case was to pursue claims against the debtors' mortgage lender in an effort to recover their residence; [5]-The bankruptcy estate had no stake in the outcome of the dispute and the court lacked jurisdiction to afford the relief requested; [6]-The second reason for reopening the case is to convert it from Chapter 7 to Chapter 13, apparently either to create standing to pursue the adversary proceeding against the lender, but cause existed.

**Outcome**
Motion denied without prejudice.

## LexisNexis® Headnotes

Bankruptcy Law > Case Administration > Closing & Reopening Cases > Grounds for Reopening

*HN1* See *11 U.S.C.S. § 350(b)*.

Bankruptcy Law > Case Administration > Closing & Reopening Cases > Grounds for Reopening

*HN2* In most instances, a motion to reopen presents only a narrow range of issues: (1) whether further administration appears to be warranted, (2) whether a trustee should be appointed, and (3) whether the circumstances of reopening necessitate payment of another filing fee.

Bankruptcy Law > Case Administration > Closing & Reopening Cases > Procedures for Reopening

Bankruptcy Law > Procedural Matters > Jurisdiction > General Overview

*HN3* Among the acceptable reasons for denying a motion to reopen is the lack of jurisdiction to grant the underlying requested relief.

Bankruptcy Law > Procedural Matters > Jurisdiction > General Overview

Civil Procedure > ... > Jurisdiction > Jurisdictional Sources > Statutory Sources

Bankruptcy Law > Case Administration > Closing & Reopening Cases > Grounds for Reopening

*HN4* Bankruptcy jurisdiction is a creature of statute. *28 U.S.C.S. §§ 157(a)* and *1334*. *Section 1334* limits the reach of that jurisdiction to, civil proceedings arising under Title 11, or arising in or related to cases under Title 11. *28 U.S.C.S. § 1334(b)*. Arising under proceedings are those that involve a cause of action created or determined by a statutory provision of Title 11. Arising in means administrative matters that arise only in bankruptcy cases and refers to proceedings that are not based on any right expressly created by Title 11, but

nevertheless, would have no existence outside of the bankruptcy. Related to jurisdiction refers to disputes in which the outcome of the proceeding could conceivably have any effect on the estate being administered in the bankruptcy. An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action, either positively or negatively, and which in any way impacts upon the handling and administration of the bankrupt estate. Moreover, when the underlying case has been closed, the matter to be pursued upon the reopening must have a close nexus to the bankruptcy estate being administered.

> Bankruptcy Law > Case Administration > Closing & Reopening Cases > Grounds for Reopening

*HN5* *11 U.S.C.S. § 350(b)* authorizes reopening to administer assets, provide the debtor relief or for other cause.

**Counsel:** [*1] For Frank Jeffrey Ketscher, Debtor: Donna M. Standard, Squaw Valley, CA.

For Carol Kathleen Ketscher, Joint Debtor: Donna M. Standard, Squaw Valley, CA.

Trustee: Robert A. Hawkins, Fresno, CA.

**Judges:** Fredrick E. Clement, United States Bankruptcy Judge.

**Opinion by:** Fredrick E. Clement

# Opinion

## MEMORANDUM DECISION

### (Corrected)

Should the bankruptcy court reopen a Chapter 7 case to allow the debtors to attack the foreclosure of their residence that occurred after the case closed, over which the court has no jurisdiction and from which the bankruptcy estate will not benefit?

### FACTS

Debtors Frank Ketscher and Carol Ketscher ("Ketschers") filed a Chapter 7 bankruptcy. On the date of the petition, the Ketschers owned real property, in which they resided, located at 33390 Antelope Lane, Squaw Valley, California. That property was listed on Schedule A. The property was encumbered by a lien in favor of JPMorgan Chase Bank. The Chapter 7 trustee filed a Report of No Distribution, the Ketschers received a discharge and the case closed.

Six months after the case closed, JPMorgan Chase foreclosed its deed of trust, divesting the debtors of title.

The Ketschers now move ex parte to reopen the case for the expressed purpose of converting the case to Chapter 13 and [*2] filing an adversary proceeding to determine the validity of the foreclose sale. The basis of the adversary proceeding is JPMorgan Chase's alleged lack of ownership of their loan, false promises of loan modification during the bankruptcy, and violations of applicable provisions of state foreclosure law, as well as common law torts, that occurred post-petition.

### JURISDICTION

This court has jurisdiction. *See 28 U.S.C. § 1334*; General Order No. 182 of the U.S. District Court for the Eastern District of California. This is a core proceeding. *See 28 U.S.C. § 157(b)(2)(A), (O)*.

### DISCUSSION

#### I. Standards for Reopening Under § 350(b)

*Section 350(b)* provides, *HN1* "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." *See also, Fed. R. Bankr. P. 5010*. *HN2* In most instances, a motion to reopen "presents only a narrow range of issues: whether further administration appears to be warranted; whether a trustee should be appointed and whether the circumstances of reopening necessitate payment of another filing fee." *Menk v. LaPaglia (In re Menk), 241 B.R. 896, 916-17 (9th Cir. BAP 1999)*. Here, none of the enumerated grounds support [*3] reopening.

#### II. Attacking the Foreclosure

*HN3* Among the acceptable reasons for denying a motion to reopen is the lack of jurisdiction to grant the underlying requested relief. *In re Ray, 624 F.3d 1124, 1136 (9th Cir. 2010)*.

*HN4* Bankruptcy jurisdiction is a creature of statute. *Celotex Corp. v. Edwards, 514 U.S. 300, 307, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995)*; *28 U.S.C. §§ 157(a)*, *1334*. *Section 1334* limits the reach of that jurisdiction to, "civil proceedings arising under title 11, or arising in or related to cases under title 11." *28 U.S.C. § 1334(b)*. "Arising under" proceedings are those "that involve a cause of action created or determined by a statutory provision of title 11." *In re Wood, 825 F.2d 90, 96-97 (5th Cir. 1987)*, cited with approval in *In re Harris Pine Mills, 44 F.3d 1431, 1435 (9th Cir. 1995)*. "Arising in" means "administrative" matters that arise *only* in bankruptcy

cases" and refers to proceedings "that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Wood, 825 F.2d at 96-97; Harris Pine Mills, 44 F.3d at 1435*. "Related to" jurisdiction refers to disputes in which "the outcome of the proceeding could conceivably have any effect on the estate [*4] being administered in the bankruptcy." *In re Fietz, 852 F.2d 455, 457 (9th Cir. 1988)*. "An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Fietz, 852 F.2d at 457*. Moreover, where as here, the underlying case has been closed, the matter to be pursued upon the reopening must have a "close nexus" to the bankruptcy estate being administered. *In re Pegasus Gold Corp., 394 F.3d 1189, 1194 (9th Cir. 2005)*. "Arising under" and "arising in" are not in play here, and the only basis for bankruptcy court involvement is the more narrow post-closure "related to" jurisdiction.

The first reason to reopen this case is to pursue an claims against JPMorgan Chase in an effort to recover the Ketschers' residence. But neither the residence, nor the causes of action arising under state law to recover it, affect the Chapter 7 estate. Upon closure, the estate abandoned its interest in the Ketschers' residence. *11 U.S.C. §554(c)*. Reopening the case will not revest that property in the estate. *Menk v. LaPaglia (In re Menk), 241 B.R. 896, 913-14 (9th Cir. BAP 1999)*. [*5] Since each of the alleged acts that give rise to state law rights against JPMorgan Chase occurred post-petition, those causes of action were never property of the estate. *Compare*, Declaration of Carol Kathleen Ketscher ¶¶ 4, 5, May 20, 2014, ECF # 24, *with 11 U.S.C. §§ 541(a)*. As a consequence, the estate has no stake in the outcome of this dispute and the court lacks jurisdiction to afford the relief requested.

### III. Converting to Chapter 13

*HN5 Section 350(b)* authorizes reopening to administer assets, provide the debtor relief or for other cause.

The second reason for reopening the case is to convert it from Chapter 7 to Chapter 13, apparently either to create standing to pursue the adversary proceeding against JPMorgan Chase, *see In re Cohen, 305 B.R. 886 (9th Cir. BAP 2004)* (avoiding powers), or to cure the deed of trust arrearage due JPMorgan Chase, *11 U.S.C. § 1322(b)(3)*. But no cause exists here. This court does not have jurisdiction to entertain the challenge the Ketschers wish to prosecute and, as a result, standing will not support a motion to reopen under *§ 350(b)*. Moreover, the residence lost after closure of the Chapter 7 case, the Ketschers have no ability to cure the arrearage, [*6] unless and until they recover the property.

### CONCLUSION

For the reasons stated, the motion is denied without prejudice.

Dated: June 5, 2014

/s/ Fredrick E. Clement

Fredrick E. Clement

United States Bankruptcy Judge

---

End of Document